FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 25, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY L.,[1] | No.  2:25-cv-305-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR AN AWARD OF BENEFITS** |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jeffrey L. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to his limitations resulting from his mental-health impairments and the ALJ erred in finding otherwise. The Court agrees

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

the ALJ erred when evaluating the medical opinions. This matter is remanded for an award of benefits.

## I.     Background

In September 2022, at the age of 25, Plaintiff applied for benefits under Title 16, claiming disability based on limitations related to Asberger's, autism, depression, and anxiety.[2] From early childhood, Plaintiff experienced speech and behavior-development delays.[3] Given his difficulties focusing and being disruptive, he was homeschooled; he received his high school diploma.[4] His mental-health medications have been managed by Teresa Hutsell, ARNP, for several years.[5]

In support of his application, he submitted an Adult Function Report and statements from his parents and a former employer. The function report stated that he gets overloaded when stressed and then will have a meltdown, his social skills are very limited as his social

_____

[2] AR 53, 178–79.

[3] *See, e.g.*, AR 285–86.

[4] AR 51, 68–70, 222, 252, 281–82, 285

[5] AR 53.

interaction is awkward, he has a hard time concentrating, he has difficulty understanding what people are saying, he has a hard time getting people to understand him, and he is irritable when he gets frustrated.[6] He needs reminders to bathe, eat, and do his chores, which he does for about 10–30 minutes a day.[7] He reports that he is unable to handle a checking or savings account or pay bills, although he is able to count change.[8] For fun, he draws and plays online games.[9]

His parents submitted a statement, which states that their son "does not and cannot live a 'normal' life" because he does not handle stress well.[10] They state that even in response to a simple request he "will freeze" and does not know how to deescalate, he is unable to handle interruptions without getting upset about having to start over, and he has to be reminded multiple times to finish the chores he is

_____

[6] AR 229.

[7] AR 230–31.

[8] AR 232.

[9] AR 233.

[10] AR 280–81.

DISPOSITIVE ORDER - 3

tasked with at home.[11] He has a "significant lack of social awareness and etiquette" in that he invades people's space when talking, he will interrupt conversations without waiting for a pause or completion, he speaks "unfiltered," and he does not have a "whisper mode."[12] They state, "Simply put, it is a lot of work and effort to get him up and going every day and through the daily life's events that are an everyday occurrence."[13]

In 2020, Plaintiff worked for an irrigation company in their warehouse. The manager at the warehouse submitted a statement describing Plaintiff's responsibilities and deficient performance:

> He struggled with multiple items on the list-He couldn't figure out the computer sales- we worked with him trying to train him how to put sales but he just couldn't get it. He was blunt and confrontational when someone would come in for parts, at one point asking a customer "Don't you know what you want?" . . . We worked with him daily but after over a month, things did not get any better and we made the decision to let him go.[14]

---

[11] AR 280.

[12] AR 280.

[13] AR 281.

[14] AR 270.

The agency denied benefits.[15] At Plaintiff's request, ALJ Allen Erickson held a telephonic hearing in May 2024, at which Plaintiff, Plaintiff's mother, and a vocational expert testified.[16]

Plaintiff testified that he has always lived with his parents because he is dependent on other people, but he does help with cleaning bathrooms, vacuuming, and dusting.[17] He said his parents remind him multiple times to do and complete his chores and to take his medications at the proper time.[18] Plaintiff testified that if he does not take his medication his "behavior would be sour, very sour. I would be irritable. My depression would rise up. I see not in a very good state of mind."[19] He does not drive because he is concerned he will have an accident since driving requires the ability to keep "so many things . . . in mind that all times, like constant attention on every little thing, like

---

[15] AR 102–10.

[16] AR 40–80.

[17] AR 57–58.

[18] AR 59–60.

[19] AR 55.

how fast you're going, how close you are to other people, how – or when you should break, how hard you should break and all that."[20] He has not dated, does not have children, and his only friends are online.[21] Plaintiff talked about the two jobs he worked—jobs that he obtained through his parents' connections.[22] One job was at a warehouse.[23] Plaintiff stated that he believed he was doing a good job and was on his "best behavior," however, after about one month, he was let go and it was mentioned that it was due to his mental issues.[24] The other job was at plant services, earning less than $5,000, until he mentally broke down at work.[25] After discussions with his parents, it was decided that he would submit a letter of resignation.[26]

---

[20] AR 57.

[21] AR 57–58.

[22] AR 52–53.

[23] AR 52–53.

[24] AR 53.

[25] AR 54, 186.

[26] AR 54.

DISPOSITIVE ORDER - 6

His mother testified that Plaintiff, even with his medication, is unable to successfully live on his own because he needs help with his medication and to care for himself.[27] She said that even though his medications help stabilize him, his parents do not leave him alone overnight.[28] His mother stated that although her son does chores, such as cleaning bathrooms or vacuuming, the quality of his work is subpar.[29] She testified that he is "very socially awkward and to himself."[30] In response to a hypothetical, she stated that her son can physically fold laundry but she was unsure whether he could do such in a full-time job.[31] She stated that he would have some controversy with either supervisors or coworkers because he "just has a hard time around people," as he is "very socially awkard, and he says what he thinks and if, you know, he doesn't think something is right, he'll say

---

[27] AR 63, 65.

[28] AR 63, 65.

[29] AR 66.

[30] AR 66.

[31] AR 67, 69.

it. And he's just not socially up."[32] She testified that her son gets very

distracted.[33] For instance, during a meal, he will get up and do

something, and he requires reminders to finish his chores because he

gets distracted.[34] She shared that when she homeschooled him she had

to repeatedly explain subjects to him in several different ways to help

him learn.[35] She stated that her son is not coordinated enough to drive

and he is not able to ride a bicycle.[36]

After the hearing, the ALJ issued a decision denying benefits.[37]

The ALJ found Plaintiff's alleged symptoms were inconsistent with the

medical evidence and other evidence, including his longitudinal

treatment history, the objective findings, his presentations at

---

[32] AR 68.

[33] AR 69.

[34] AR 69.

[35] AR 68, 69.

[36] AR 69.

[37] AR 15–35. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation

determines whether a claimant is disabled.

DISPOSITIVE ORDER - 8

appointments and mental status examinations, and his rather independent daily activities.[38] The ALJ considered the lay statements from Plaintiff's parents and his former warehouse employer, finding them similar to Plaintiff's own symptom statements, which the ALJ found not fully consistent with the evidence.[39] As to the medical opinions, the ALJ found:

- the State agency reviewing opinions by Vincent G, PhD, and Renee Eisenhauer, PhD, most persuasive.

- the psychiatric consultative examination opinion of Emily Ketchel, PMHNP, unpersuasive.[40]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 25, 2022, the application date.

---

[38] AR 26–29. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[39] AR 29.

[40] AR 28–29.

1     • Step two: Plaintiff had the following medically determinable

2     severe impairments: depressive disorder, general anxiety

3     disorder, autistic spectrum disorder, and attention deficit

4     hyperactivity disorder (ADHD).

5     • Step three: Plaintiff did not have an impairment or

6     combination of impairments that met or medically equaled the

7     severity of one of the listed impairments.

8     • RFC: Plaintiff had the RFC to perform a full range of work at

9     all exertional levels but with the following nonexertional

10    limitations:

11    He can understand, remember, and apply simple, short
      instructions. He can perform only routine, repetitive,
12    predictable tasks that are not in a fast-paced, production-
      type environment, such as that with assembly lines or a
13    high hourly quota. He can make only simple decisions. He
      can have exposure to only few, routine workplace changes.
14    He can have no interaction with the general public, and
      only occasional, superficial interactions with coworkers
15    and supervisors, and not in a team-oriented environment.
      (Occasional means one-thirds of the day; and superficial
16    means basic interaction, and working with coworkers and
      supervisors is not the focus of the job).

17    • Step four: Plaintiff has no past relevant work.

18    • Step five: considering Plaintiff's RFC, age, education, and work

19    history, Plaintiff could perform work that existed in significant

DISPOSITIVE ORDER - 10

numbers in the national economy, such as laundry worker; laborer, stores; and kitchen helper.[41]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which decided that the additionally submitted medical record from ARNP Hutsell dated September 1, 2024, did not show a reasonable probability that it would change the outcome of the decision, and the Appeals Council affirmed the ALJ's decision.[42] Plaintiff then sought timely review by this Court.[43]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[44] "Substantial evidence is

---

[41] AR 18–31.

[42] AR 1–6, 14.

[43] ECF No. 1.

[44] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing

DISPOSITIVE ORDER - 11

1    'more than a mere scintilla but less than a preponderance; it is such

2    relevant evidence as a reasonable mind might accept as adequate to

3    support a conclusion.'"[45]

4                          **III.   Analysis**

5        Plaintiff argues the ALJ committed several errors: (1) the ALJ

6    failed to properly evaluate the medical opinions; (2) the ALJ failed to

7    properly consider the longitudinal record when evaluating Plaintiff's

8    mental conditions; (3) the ALJ failed to properly assess Plaintiff's RFC;

9    _____

10   that the court may not reverse an ALJ decision due to a harmless

11   error—one that "is inconsequential to the ultimate nondisability

12   determination").

13   [45] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978,

14   980 (9th Cir. 1997)). *See also Kaufmann v. Kijakazi*, 32 F4th 843, 851

15   (9th Cir. 2022) (recognizing the court looks to the entire record to

16   determine if substantial evidence supports the ALJ's findings); *Black*

17   *v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite

18   specific evidence does not indicate that such evidence was not

19   considered[.]").

and (4) the ALJ failed to determine that Plaintiff's autism spectrum disorder was sufficient to meet or equal a listing. The Commissioner disagrees that error occurred, maintaining that the ALJ's decision is supported by substantial evidence. As is explained below, the ALJ erred by failing to fully and fairly consider the nature of Plaintiff's chronic and life-long mental-health impairments and this error impacted the ALJ's evaluation of the medical opinions.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by finding the reviewing opinions of Dr. G and Dr. Eisenhauer most persuasive, finding the opinion of consultative examiner Nurse Practitioner Ketchel unpersuasive, and ignoring the psychological assessment done by Dr. Rebecca Braymen in 2014. The Court agrees the ALJ consequentially erred when evaluating the medical opinions.

### 1.    Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with

1    and supported by the record.[46] The factors for evaluating

2    persuasiveness include, but are not limited to, supportability,

3    consistency, relationship with the claimant, and specialization.[47]

4    Supportability and consistency are the most important factors:

5        (1) Supportability. The more relevant the objective medical
6    evidence and supporting explanations presented by a
     medical source are to support his or her medical opinion(s) or
     prior administrative medical finding(s), the more persuasive
7    the medical opinions or prior administrative medical
     finding(s) will be.

8
9        (2) Consistency. The more consistent a medical opinion(s) or
     prior administrative medical finding(s) is with the evidence
     from other medical sources and nonmedical sources in the
10   claim, the more persuasive the medical opinion(s) or prior
     administrative medical finding(s) will be.[48]

11   The ALJ may, but is not required to, explain how the other listed

12   factors were considered.[49]

13

14   _____

15   [46] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

16   Cir. 2022).

17   [47] 20 C.F.R. § 416.920c(c)(1)–(5).

18   [48] *Id.* § 416.920(c)(1)–(2).

19   [49] *Id.* § 416.920c(b)(2).

DISPOSITIVE ORDER - 14

When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[50]

1.   Medical opinions

a.   *Dr. Braymen*

In 2014, when Plaintiff was 18 years old, he was psychologically evaluated by Rebecca Braymen, PhD.[51] The evaluation included an interview of Plaintiff, answering questions by Plaintiff's parents, a mental status examination, reviewing testing done two years prior by board-certified neuropsychologist Dr. William Britt, and testing of Plaintiff's intelligence, attention/concentration, and emotional and behavioral functioning. Dr. Brayman observed Plaintiff's mood to be anxious at times, attitude as cooperative and friendly, affect as constricted and congruent with his mood, and speech as slow and too detailed. He also observed Plaintiff to be restless, agitated, and orientated, with immature and minimally impaired judgment, limited insight, and tangential, disorganized, and obsessive thought processes,

---

[50] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[51] AR 282–97.

DISPOSITIVE ORDER - 15

with flight of ideas and loose associations.[52] Plaintiff performed above average on the WASI-II intelligence functioning test; and the CCPT-II results showed that Plaintiff's medication was successfully managing his attention problems.[53] Dr. Braymen noted that Plaintiff's parents reported that he has difficulty tolerating changes in routine, activities, and behavior, and sometimes engages in purposeless and repetitive tasks.[54] Dr. Braymen diagnosed Plaintiff with autism spectrum disorder, ADHD, generalized anxiety disorder, and unspecified depressive disorder.[55] She recommended that Plaintiff continue with his medication management and individual therapy, participate in neurofeedback, be evaluated for pragmatic language deficits, and be encouraged to continue in loosely structured group activities where he could practice social skills.[56]

---

[52] AR 286–87.

[53] AR 287–93.

[54] AR 295–96.

[55] AR 283–84.

[56] AR 284–85.

1

        b.    _Nurse Practitioner Ketchel_

2          In April 2023, Nurse Practitioner Ketchel performed a psychiatric

3   consultative examination at the request of the Social Security

4   Administration.[57] NP Ketchel reviewed a psychiatric record from

5   2021,[58] interviewed Plaintiff, and conducted a mental status

6   examination. Plaintiff was observed as cooperative with fair eye

7   contact with his head bowed most of the examination, restless with

8   constant hand and leg fidgeting, normal speech, normal mood and

9   affect, circumstantial thought process, unremarkable thought content,

10  and fair attention and concentration during the conversational portion

11  of the evaluation, as NP Ketchel had to repeat questions due to him not

12  paying attention.[59] During the memory testing, Plaintiff's remote and

13  _____

14  [57] AR 344–50.

15  [58] Although the date of the record is not listed by NP Ketchel, the only

16  2021 medical record in the administrative record is the November 5,

17  2021 treatment record by Plaintiff's treating provider, ARNP Hutsell.

18  AR 299–301.

19  [59] AR 347.

DISPOSITIVE ORDER - 17

immediate and delay recall were correct, and repeated digit spans forward and backward were correct except for the six-digit forward span.[60] Plaintiff had difficulty counting backwards by serial threes.[61] When performing the three-step command, Plaintiff asked for the instructions to be repeated.[62] NP Ketchel opined that Plaintiff was able to manage his funds and would be able to interact with coworkers, superiors, and the public and adapt to usual workplace stresses notwithstanding his inability to understand social cues, but was not able to understand, remember, and carry out simple instructions given his struggles with forward-number repetition, serial-three subtraction, and three-step command; not able to understand, remember, and carry out complex instructions due to his struggles with serial threes and poor attention during the interview; and not able to sustain concentration and persist in work-related activity at a reasonable pace, including regular attendance and work completion, given his frequent

---

[60] AR 347.

[61] AR 348.

[62] AR 348.

DISPOSITIVE ORDER - 18

interruptions and social-situation uncomfortableness, as evidenced by poor eye contact and bowed head.[63]

   c. _Dr. G and Dr. Eisenhauer_

  Dr. G reviewed the administrative record in April 2023.[64] Dr. G found Plaintiff moderately limited in his abilities to:

- Understand, remember, and carry out detailed instructions.
- Maintain attention and concentration for extended periods.
- Work in coordination with or in proximity to others without being distracted by them.
- Complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest breaks.
- Interact appropriately with the public.
- Get along with coworkers or peers without distracting them with or exhibiting behavioral extremes.

---

[63] AR 349.

[64] AR 85–90.

- Respond appropriately to changes in the work setting.

- Set realistic goals or make plans independently of others.

Dr. G suggested that Plaintiff avoid public contact, interact with others on an occasional/superficial basis, perform routine work in a predictable setting, and have goals set by the supervisor.[65]

In September 2023, Dr. Eisenhauer reviewed the medical records, and she agreed with Dr. G's opined limitations.[66]

2.    The ALJ's findings

The ALJ found Dr. G's and Dr. Eisenhauer's opinions most persuasive because (1) they were supported by narrative explanation and based on a longitudinal evaluation of the record; (2) they have knowledge of the SSA program; (3) their opinions were:

> entirely consistent with the claimant's longitudinal mental health treatment history, his presentations at appointments and mental status examination, the statements of improvement with treatment or denials of symptoms, and his documented daily activities, such as taking care of his own hygiene, doing chores at home, shopping and going to places with family, playing video games and socializing with

_____

[65] AR 88.

[66] AR 92–99.

1

2

friends online, and the reported significant limitations with social functioning . . . .[67]

The ALJ found NP Ketchel's opinion regarding Plaintiff's abilities as to simple instructions and sustaining concentration, persistence, and attendance unpersuasive because:

- It was an overestimate of the severity of Plaintiff's cognitive restrictions and based only on a snapshot of his functioning.

- It was not consistent with other evidence showing that Plaintiff's mental symptoms were stable on medications, and his presentation at appointments, his reported activities of daily living, and his statements of improvement.

The ALJ also found NP Ketchel's opinion that Plaintiff is able to interact with coworkers, superiors, and the public without restrictions unsupported because the totality of the record showed that he had significant social-functioning limitations, and that he should be limited to simple, repetitive work in a stable/predictable work environment

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

---

[67] AR 28 (internal citations to the record omitted).

DISPOSITIVE ORDER - 21

with few changes and with no public contact and no more than occasional, superficial interaction with coworkers and supervisors.[68]

The ALJ found Dr. Braymen's opinion to have little probative value because it "predates the SSI filing date by almost eight years and therefore does not reflect the claimant's functioning during the relevant period and has little probative value."[69]

The ALJ's medical-opinion analysis was accompanied by the ALJ's finding that Plaintiff had a marked limitation in his ability to interact with others and a moderate limitation in his abilities to (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace; and (3) adapt or manage himself.[70]

3.    <u>Analysis</u>

The ALJ's evaluation of the medical records, and in turn the medical opinions, was impacted by the ALJ's failure to fairly consider the lifelong nature and extent of Plaintiff's mental impairments and

---

[68] AR 28–29.

[69] AR 29.

[70] AR 22–23.

the nature of the noted improvement in Plaintiff's mental-health symptoms. As is evidenced by the statements from Plaintiff's parents and supervisor, the observations of his treating provider ARNP Hutsell, and the evaluations performed by Dr. Britt, Dr. Braymen, and NP Ketchel, Plaintiff's mental impairments have significantly impacted him from a young age and have continued to do so.

The record reflects that even though medication was "adequately maintain[ing] his attention and focus," during the relevant period, Plaintiff was dependent on his parents to manage his life and was unable to successfully live on his own. Even for the household chores that Plaintiff assisted with for short periods of the day, daily reminders were needed for him to complete the task. In addition, even though he took medication for years, Plaintiff still needed the assistance of his parents to take the medication on schedule.

Plus, even though Plaintiff was "stable" on medication, ARNP Hutsell routinely observed Plaintiff with a concrete thought process, a slightly halting speech pattern, and restricted affect.[71] Treatment notes

---

[71] *See* AR 454, 468, 490, 512, 528.

reflect that even while stable on medications, he continued to have behavioral symptoms that caused him to be dependent on living with his parents and he needed reminders for chores and redirecting during the consultative examination with NP Ketchel.[72] In July 2023, ARNP Hutsell mentioned in her treatment note, "Patient remains in care of his parents that help ensure ADLs are completed. He does not perform ADLs without reminders."[73] Again, in October 2023, ARNP Hutsell wrote, "he continues to do well under the care of his parents. He needs reminders to take his medications and regarding personal hygiene and other daily activities of living."[74] ARNP Hutsell wrote in February 2024 that "Patient's autism does make behavioral changes more difficult."[75]

When the record is fully and fairly viewed, substantial evidence does not support the ALJ's finding that Dr. G's and Dr. Eisenhauer's opined limitations were more consistent with Plaintiff's longitudinal

---

[72] *See, e.g.*, AR 299, 333–35, 404–06, 467–70.

[73] AR 357.

[74] AR 513.

[75] AR 470.

1    mental health treatment history, his presentations at appointments

2    and the psychological examinations performed by Dr. Braymen and

3    NP Ketchel, and the statements of improvement with treatment or

4    denials of symptoms.[76]

5        Moreover, substantial evidence does not support the ALJ's

6    finding that Plaintiff's daily activities, including taking care of his own

7    hygiene, doing a few chores at home each day with reminders, and

8    playing video games and socializing with his online friends, were

9    inconsistent with NP Ketchel's opinion that Plaintiff was unable to

10   sustain and persist in full-time work.[77] Plaintiff has not lived on his

11

   _____

12   [76] *See Ghanim v. Colvin*, 763 F.3d 1154,1164 (9th Cir. 2014)

13   (emphasizing that treatment records must be viewed considering the

14   overall diagnostic record).

15   [77] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017)

16   (recognizing that the fact the claimant "could participate in some daily

17   activities does not contradict the evidence of otherwise severe problems

18   that she encountered in her daily life during the relevant period"); *Fair*

19   *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

own and was unable to sustain his two prior attempts at employment. The ALJ did not discuss why Plaintiff's choice of playing video games and making friends online, rather than in person, is reflective of an ability to sustain full-time work rather than a byproduct of his social limitations and concrete thinking relating to his mental-health impairments.

As to the ALJ's supportability analysis, the ALJ failed to explain why NP Ketchel's opinion that Plaintiff would be unable to sustain concentration and persist at work was not supported by her observation that Plaintiff had to have questions repeated because he was not paying attention, was fidgeting, and displayed social uncomfortableness. Moreover, the basis for the ALJ's finding that Dr. G's and Dr. Eisenhauer's opinion that Plaintiff can sustain concentration and persist at work was supported "by narrative explanation" is unclear.[78] Although their Disability Determination Explanation Forms summarize some of the medical records and

---

[78] AR 28.

NP Ketchel's opinion, missing from the Disability Determination Explanations is any explanation as to why they disagreed with NP Ketchel's concentration and persistence limitations, particularly given that NP Ketchel had to repeat questions and she observed Plaintiff with poor posture and restlessness.[79] That Dr. G and Dr. Eisenhauer found that NP Ketchel's "exam overall is consistent with the ability to perform simple repetitive tasks,"[80] is not necessarily inconsistent with Dr. Ketchel's opinion that Plaintiff cannot *sustain* simple repetitive tasks over the course of a workday. There was no evidence discussed by Dr. G and Dr. Eisenhauer to explain why they disagreed with NP Ketchel's opinion that Plaintiff could not sustain full-time work. In summary, the ALJ did not explain why Dr. Ketchel's opined persistence limitation was less supported than Dr. G's and Dr. Eisenhauer's opinions as to Plaintiff's persistence abilities.[81]

---

[79] AR 82–99.

[80] AR 86, 96.

[81] *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the

1    The ALJ's errors when evaluating the evidence and the medical

2    opinions requires remand.[82]

3    **B.    Remand: award benefits.**

4    Plaintiff asks for an award of benefits; whereas the Commissioner

5    argues this record does not justify an award of benefits.

6    Although remand for further administrative proceedings is the

7    usual course when a harmful error occurs in the administrative

8    proceeding, this is a rare circumstance where an award of benefits is

9    appropriate.[83] First, this record contains the treatment records from

10    _____

11    court to meaningfully review the ALJ's finding); *Humane Soc. of U.S. v.*

12    *Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010 (requiring an agency to

13    provide an explanation that "enables meaningful judicial review");

14    *Burnett v. Bowen*, 930 F.3d 731, 736 (7th Cir. 1987).

15    [82] Plaintiff's other arguments in support of remand need not be

16    addressed.

17    [83] *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099

18    (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729,

19    744 (1985)).

his primary provider, a consultative psychological examination ordered by the SSA, a prior psychological examination that references an even earlier examination, a statement from a prior employer, a statement from his parents, and testimony from Plaintiff and his mother. Plaintiff's mental-health impairments are life-long and there is no assertion that the continued use of medication will lessen Plaintiff's concentration, attention, and interpersonal difficulties resulting from his autism spectrum disorder, ADHD, depressive disorder, and a general anxiety order. Further administrative proceedings to develop the record will serve no useful purpose.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons to reject NP Ketchel's opined concentration and persistence limitations.

Third, if NP Ketchel's opinion that Plaintiff is unable to sustain concentration and persist in work-related activity at a reasonable pace is credited, Plaintiff is disabled. The vocational expert testified that an employee who is off task more than 10 percent of the time is

unemployable.[84] In addition, the vocational expert testified that, outside the supported-employment realm, an individual who requires close and frequent supervision because of an inability to complete tasks without further prompting is unemployable.[85]

Therefore, benefits are warranted.

### IV.    Conclusion

Plaintiff establishes the ALJ erred and that an award of benefits is appropriate. Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for immediate calculation and award of benefits**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 15**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[84] AR 74.

[85] AR 75–76.

1    IT IS SO ORDERED. The Clerk's Office is directed to file this

2 order and provide copies to all counsel.

3    DATED this 25th day of February 2026.

4

5                    EDWARD F. SHEA
                Senior United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

DISPOSITIVE ORDER - 31